**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| CHARLENE CHELI, an Individual, | |
| Plaintiff, | |
| vs. | Case No. 1:23-cv-1174 |
| BOSTON MARKET CORPORATION, a Delaware Corporation | **COMPLAINT** |
| Defendant. | |

## Introduction

Plaintiff, CHARLENE CHELI, an individual, on her own behalf and on the behalf of all other similarly situated mobility impaired persons hereby sues the Defendant, BOSTON MARKET CORPORATION, a Delaware Corporation, for injunctive relief, damages, attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. §12181 et seq. ("ADA") and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq. ("LAD").

## The Parties

1.     Plaintiff, CHARLENE CHELI, is an individual over eighteen years of age and is otherwise sui juris.

2.     Defendant, BOSTON MARKET CORPORATION, owns or operates a place of public accommodation, in this instance a quick service restaurant, alleged by the Plaintiff to be operating in violation of Title III of the ADA and the LAD.

**Jurisdiction and Venue**

3.      Defendant's property, known as Boston Market Store #1072, is a quick service restaurant located at 514 High Street, Mt Holly, NJ 08060, Burlington County ("Boston Market" or the "Property").

4.      Venue is properly located in the District of New Jersey because venue lies in the judicial district of the property situs.  The Defendant's property is located in and does business within this judicial district.

5.      Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.[1]

6.      Jurisdiction over the state law claim vests with this Court pursuant to 28 U.S.C § 1367.

7.      The Defendant owns, leases, leases to, or operates a place of public accommodation as defined by the ADA and the regulations implementing the ADA.  The Defendant is thus required to comply with the obligations of the ADA.[2]

8.      Plaintiff, CHARLENE CHELI, is an individual with disabilities - as defined by and pursuant to the ADA.  Ms. Cheli has been diagnosed with facioscapulohumeral muscular dystrophy and therefore has a physical impairment that substantially limits many of her major life activities[3] including, but not limited to, not being able to walk, stand, reach, or lift. Ms. Cheli requires, at all times, the use of a wheelchair to ambulate.

---

[1] See also 28 U.S.C. § 2201 and 28 U.S.C. § 2202

[2] 28 CFR § 36.201(a) and 28 CFR § 36.104

[3] as defined by 28 CFR § 36.105(b)(1-2)

**Factual Background**

9.      Ms. Cheli is a staunch advocate of the ADA. Since becoming mobility impaired (and having to fully rely on the use of her wheelchair to ambulate) she has dedicated her life to the elimination of accessibility discrimination so that she, and others like her, may have full and equal enjoyment of all public accommodations without fear of discrimination and repeated exposure to architectural barriers.

10.      Ms. Cheli continues to encounter architectural barriers at many of the places that she visits. Seemingly trivial architectural features such as parking spaces, curb ramps, and door handles are taken for granted by the non-disabled but, when implemented improperly, become arduous and even dangerous.

11.      The barriers to access that Ms. Cheli experiences at differing places of public accommodation are often similar in nature. For example, she is repeatedly faced with sloping in parking lots, improper curb ramps, and non-accessible restrooms (even when designated "accessible" or "handicapped"). She has become frustrated and disheartened by the repetitiveness of the complaints she has been forced to make to the employees and management at various establishments in the past, often to no avail. Thus, she now finds her redress through the ADA, just as Congress intended.

12.      Ms. Cheli has visited the Property on several occasions, her last visit as a patron of the interior occurred on or about October 25, 2022.  Ms. Cheli visited the Property as a bone fide patron with the intent to avail herself of the goods and services offered to the public within but found that the Property was littered with violations of the ADA, both in architecture and in policy. Ms. Cheli subsequently returned to the exterior of the Property in January 2023, but no change in exterior conditions was observed.

13.     Ms. Cheli intends to return to Boston Market not only as a patron but also to monitor any progress made with to respect to ADA compliance - she sincerely hopes that her return visits are not made in vain.

14.     Ms. Cheli has accumulated friends and family across the mid-Atlantic region. Now that she has retired, she has plenty of time to travel and regularly visit them across New Jersey, New York, Pennsylvania, Delaware, and Maryland.[4]

15.     Ms. Cheli travels to and through the Mt. Holly area and the 295 corridor to visit friends and family; as well as shop throughout the area.

16.     Ms. Cheli has personally encountered exposure to architectural barriers and otherwise harmful conditions that have endangered her safety at the Property.

17.     The ADA has been law for over thirty (30) years and the Property remains non-compliant. Thus, the Plaintiff has actual notice and reasonable grounds to believe that she will continue to be subjected to discrimination by the Defendant.

18.     Plaintiff has a realistic, credible, existing, and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to the Property as described but not necessarily limited to the barriers she has personally experienced which are listed in paragraph 23 of this complaint.

19.     Following any resolution of this matter Plaintiff will ensure that the Property undertakes the remedial work that is required under the appropriate standard and is compliant with the ADA. This reinspection will occur as set forth in the parties' settlement agreement or as ordered by this Court.

---

[4] Ms. Cheli would prefer not to list her friends or family members in this public document but would do so under seal if ordered by this Court.

## COUNT I

### Violation of Title III of the
### Americans with Disabilities Act, 42 U.S.C. § 12181, et seq.

20.     Plaintiff realleges and incorporates by reference all of the allegations contained in all of the preceding paragraphs.

21.     The Defendant has discriminated against the Plaintiff, and other similarly situated mobility impaired persons, by denying access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the Property, as prohibited by the ADA.

22.     A preliminary inspection of the Property has shown that violations of the ADA exist.  That inspection, performed by Plaintiff's expert, further revealed that the remediation of all violations/barriers listed in paragraph 23 are both technically feasible and readily achievable.

23.     The following are architectural barriers and violations of the ADA that Ms. Cheli has personally encountered during her visits to Boston Market:

**Parking and Exterior Accessible Route**

a.  The designated accessible parking spaces throughout the Property are not maintained, lack compliant access aisles, and fail to lead to a compliant accessible route or curb ramp; all in violation of the ADAAG and Sections 402 and 502 of the 2010 ADA Standards.  Excessive sloping presents Ms. Cheli with a tipping hazard and could also cause damage to her wheelchair; to avoid these obstacles she was forced to park away from the facility in a level area, travel around obstacles, and then finally through the traffic area of the lot in order to reach the entrance. The remediation of these barriers is both technically feasible and readily achievable.

b.  The designated accessible parking spaces throughout the Property lack adequate access

aisles, in violation of the ADAAG and Sections 402 and 502 of the 2010 ADA Standards. The access aisles provided contain excessive sloping, fail to lead to an accessible route, and are impeded by protruding camp ramps. Due to the lack of adequate access aisles, Ms. Cheli was forced to park away from the restaurant (and as detailed above) so that she could freely access her vehicle; she was forced to travel through the traffic area of the parking lot in order to reach the building. The remediation of this barrier is both technically feasible and readily achievable.

c.  Boston Market fails to provide the requisite number of compliant accessible parking spaces and van-accessible parking spaces (as well as the requisite number of access aisles and van access aisles), a violation of Section 502 of the 2010 ADA Standards. Due to the lack of accessible parking spaces and as detailed above, Ms. Cheli was forced to park away from the restaurant so that she could freely access her vehicle. The remediation of this barrier is both technically feasible and readily achievable.

**Entrance Access and Path of Travel**

d.  The exterior accessible route throughout the Property is impeded by improper curb ramps that contain excessive sloping, abrupt changes in level, and protrude into access aisles; in violation of the ADAAG and Sections 402 and 406 of the 2010 ADA Standards.  Ms. Cheli was impeded by the excessive sloping and abrupt changes of level while traveling from the parking lot to the restaurant – these conditions present a tipping hazard and could damage her wheelchair. The remediation of these barriers is both technically feasible and readily achievable.

e.  The exterior accessible route leading from parking spaces at the Property is impeded by excessive sloping and abrupt changes of level; a violation of the ADAAG and Section 402

of the 2010 ADA Standards. These conditions have presented Ms. Cheli with a tipping hazard which could cause a fall and damage to her wheelchair. The remediation of this barrier is both technically feasible and readily achievable.

f.   The Property fails to provide a compliant route to the adjacent street/sidewalk and/or the public transportation route. Ms. Cheli is precluded from accessing the Property from these areas due to the lack of an accessible route; a discriminatory omission which limits her options for transportation; a violation of ADAAG and Section 206.2.1 of the 2010 ADA Standards.

**Access to Goods and Services**

g.   Boston Market fails to provide accessible dining tables – in violation of the ADAAG and Section 902 of the 2010 ADA Standards. Due to the lack of accessible tables Ms. Cheli has not been able to dine in a comfortable manner. The remediation of these barriers is both technically feasible and readily achievable.

h.   Ms. Cheli could not access the restaurant without assistance due to a lack of wheelchair maneuvering clearance; a violation of the ADAAG and Sections 404 of the 2010 ADA Standards. The remediation of these barriers is both technically feasible and readily achievable.

**Restrooms**

i.   Restrooms within Boston Market are inaccessible to mobility impaired persons. The barriers to access include incorrect signage, inaccessible water closets which lack the proper controls, and a lack of wheelchair maneuvering space; violations of the ADAAG and Section 601 of the 2010 ADA Standards.

j.  The restrooms within Boston Market contain dispensers which are improperly mounted beyond Ms. Cheli's reach – and the reach of all wheelchair users – in violation of the ADAAG and Section 308 of the 2010 Standards. Due to their improper locations Ms. Cheli could not make use of the dispensers within the restrooms. The remediation of these barriers is both technically feasible and readily achievable.

k.  The restrooms within Boston Market contain improper centerlines for the water closets and a lack of wheelchair maneuvering clearance, in violation of the ADAAG and Section 604 of the 2010 ADA Standards. Due to these barriers Ms. Cheli could not make use of the water closets without assistance. The remediation of these barriers is both technically feasible and readily achievable.

l.  The restrooms within Boston Market contain lavatories that lack the requisite knee and toe clearance; in violation of the ADAAG and Section 606 of the 2010 ADA Standards. Due to the inaccessibility Ms. Cheli could not wash her hands nor make use of the sinks. The remediation of these barriers is both technically feasible and readily achievable.

m.  The doors used to access the restrooms within Boston Market are impeded by improper door hardware, improper signage, and a lack of maneuvering clearance. Due to the lack of access Ms. Cheli could not enter/exit the restrooms without assistance. The remediation of these barriers is both technically feasible and readily achievable.

24.  Each of the foregoing violations is also a violation of the ADA Standards for Accessible Design, originally published on July 26, 1991 and republished as Appendix D to 28 CFR part 36 ("1991 Standards"); the "2004 ADAAG", which refers to ADA Chapter 1, ADA Chapter 2, and Chapters 3 through 10 of the Americans with Disabilities Act and the Architectural Barriers Act

Accessibility Guidelines, which were issued by the Access Board on July 23, 2004 and codified at 36 CFR § 1191, appendix B and D ("ADAAG"); and the 2010 Standards for Accessible Design ("2010 ADA Standards"), as promulgated by the U.S. Department of Justice.[5]

25.     The discriminatory violations described in paragraph 23 may not be an exhaustive list of the ADA violations that exist at Boston Market, but they are the result of a preliminary inspection conducted by the Plaintiff and include all those personally experienced by Ms. Cheli.  Plaintiff requires thorough inspection of the Defendant's place of public accommodation in order to photograph and measure the architectural barriers which exist at the Property in violation of the ADA/LAD.

26.     Plaintiff, and other similarly situated mobility impaired persons, will continue to suffer discrimination, injury and damage without the immediate relief provided for by the ADA and requested herein.

27.     Defendant has discriminated against Plaintiff, and other similarly situated mobility impaired persons, by denying access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of the ADA.

28.     Defendant continues to discriminate against Plaintiff, and other similarly situated mobility impaired persons, by failing to remove architectural barriers, and communication barriers that are structural in nature.[6]

29.     Defendant continues to discriminate against Plaintiff, and other similarly situated mobility

---

[5] 28 CFR § 36.104

[6] 42 U.S.C. § 12181(b)(2)(A)(iv)

impaired persons, by failing to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities.[7]

30.     Defendant continues to discriminate against Plaintiff, and other similarly situated mobility impaired persons, by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.[8]

31.     If the Defendant's facility is one which was designed and constructed for first occupancy subsequent to January 26, 1993[9] then the Defendant's facility must be readily accessible to and useable by individuals with disabilities in accordance with the 1991 Standards.

32.     Pursuant to 28 CFR § 36.402(a)(1) "any alteration" made to the Property after January 26, 1992, must have been made so as to ensure that, to the maximum extent feasible, the altered portions of the Property are readily accessible to and usable by individuals with disabilities, including individuals, like Ms. Cheli, who use wheelchairs. An alteration is deemed to be undertaken after January 26, 1992, if the physical alteration of the property begins after that date.[10] Discovery in this matter will reveal if and when such alterations have taken place at the Property, and to what corresponding technical and scoping specification the Defendant must meet/exceed to bring the Property into compliance with the ADA.

33.     Pursuant to 28 CFR § 36.304(a) Defendant shall remove all existing architectural barriers,

---

[7] 42 U.S.C. § 12181(b)(2)(A)(ii)

[8] 42 U.S.C. § 12181(b)(2)(A)(iii)

[9] as defined by 28 CFR § 36.401(a)(2)

[10] 28 CFR § 36.402(a)(2)

including communication barriers that are structural in nature, where such removal is readily achievable.

34.     28 C.F.R. § 36.304(d)(2)(i) controls with respect to the corresponding technical and scoping specification to which each element - that has not been altered - must comply with or be modified to meet. Those are defined as follows:

    a.  Elements that have not been altered since on or after March 15, 2012, must comply with the 1991 Standards.

    b.  Elements that have existed prior to and have not been altered since on or after March 15, 2012, that do not comply with the 1991 Standards must be modified to comply with either the 1991 Standards or the 2010 Standards.

    c.  Elements that have been altered on or after March 15, 2012, that do not comply with the 1991 Standards must be modified to comply with the 2010 Standards.

35.     Plaintiff is not required to notify Defendant of their violation of the ADA nor their ongoing discrimination prior to the filing of this action. To that end, Plaintiff has found that voicing concerns to employees and management, making phone calls, and writing letters is futile. In her experience the only way to spur action and achieve the accessibility required under the law is to file matters, like this one, and pray for the relief contained herein.

36.     Plaintiff is without adequate remedy at law and is suffering irreparable harm, including bodily injury consisting of emotional distress, mental anguish, suffering, and humiliation. Considering the balance of hardships between the Plaintiff and the Defendant, a remedy in equity is warranted.  The public interest would not be disserved by the issuance of a permanent injunction.

37.     Pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505, Plaintiff are entitled to recovery of attorney's fees, costs, and litigation expenses from the Defendant.

38.     Pursuant to 42 U.S.C. § 12188(a)(2), this Court is provided with authority to grant Plaintiff injunctive relief, including an order to require the Defendant to alter the Property and make such readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the Property until such time as the Defendant cure their violations of the ADA.[11]

**WHEREFORE,** Plaintiff respectfully demands;

a.  The Court issue a Declaratory Judgment determining that the Defendant is in violation of Title III of the ADA.

b.  Injunctive relief against the Defendant including an order to (1) cure all ADA violations existing at the Property listed herein and those later found through discovery within the next six months; (2) to make the Property accessible to and usable by individuals with disabilities; and (3) to require the Defendant to make reasonable modifications in policies, practices or procedures, to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c.  An Order requiring the Defendant to cease its discriminatory practices and to maintain the requisite accessible features at the Property - as required by the ADA.

d.  An award of attorney's fees, costs, and litigation expenses pursuant to 42 U.S.C. § 12205.

e.  Such other relief as the Court deems just and proper and is allowable under Title III of the ADA.

---

[11] 42 U.S.C. § 12188(b)(2)

## COUNT II

**Violation of New Jersey Law
Against Discrimination, N.J.S.A. 10:5-1 et seq.**

39.     Plaintiff realleges and incorporates, by reference, all of the allegations contained in all of the preceding paragraphs.

40.     The Property is a place of public accommodation as defined by N.J.S.A 10:5-5.

41.     New Jersey law provides that all persons shall have the opportunity to obtain all the accommodations, advantages, facilities, and privileges of any public place of accommodation without discrimination on the basis of disability.  This opportunity is recognized and declared to be a civil right.[12]

42.     As set forth above, the Defendant has violated the LAD by denying Ms. Cheli, and all other mobility impaired individuals, the full and equal enjoyment of the goods, facilities, services, and accommodations available at the Property.

43.     As a result of the aforementioned discrimination through repeated exposure to architectural barriers and other harmful conditions, Ms. Cheli has sustained bodily injury in the form of emotional distress, mental anguish, suffering and humiliation, in violation of the LAD.

**WHEREFORE**, Plaintiff respectfully demands;

  a.   That this Court assume jurisdiction.

  b.   The Court issue a Declaratory Judgment determining that the Defendants are in violation of the LAD.

  c.   An injunction ordering Defendant to immediately comply with the LAD by removing all architectural barriers listed herein or later found through discovery.

---

[12] Pursuant to N.J.S.A 10:5-4

d.  A monetary award consisting of the individual Plaintiff's damages – to the maximum extent permitted, attorney's fees, and litigation expenses; including expert's fees and costs.

e.  An order requiring the Defendant to cease its discriminatory practices and to maintain the requisite accessible features at the Property - as required by the LAD.

f.  Other relief that this Court deems just and proper and is allowable under the LAD.

Respectfully submitted on this 1st day of March 2023,

/s/ Jon G. Shadinger Jr.
Jon G. Shadinger Jr., Esq.
Shadinger Law, LLC
717 E. Elmer Street, Suite 7
Vineland, NJ 08360
Direct (609) 319-5399
Office (609) 236-3211
Fax (609) 900-2760
js@shadingerlaw.com
*Attorney for Plaintiff*